I'd like to reserve three minutes for rebuttal. There's another end of that microphone. I don't know where it is. Hello. Oh, I'll try this one. Oh, all right. No, kind of speak in the middle. Okay. Yeah, like that. Like that? Yeah. Perfect. You're on, you're being taped too, you know. Okay. Good morning, Your Honors. Good morning. Carla Johnson representing Kinzie Noordman. I would talk about three things. One is 2254D and why it's satisfied. Why clearly established federal law was violated. You're talking about D1, not D2. Well, I have an argument on both, but D1 is my main one. But before I get too far, I'd like to make three important points. These three defendants, the two defendants and the victim were all 19 and 20 years old at the time of this crime. They were best friends in high school. My client was 20, and she's doing 45 years to life in prison. Well, it's a pretty aggravated murder, I mean, in terms of premeditation. And they couldn't have been that good of friends. Well, if it was an accident, they could have. The jury didn't believe the defense theory, though, did it? I mean, that was the defense. Well, that's the whole question, did they? They convicted, so I think we have to view the evidence in the light most favorable to support the verdict. Well, that depends on whether the note of the answer to the note had them. My whole theory is that the note influenced them to find her guilty because she shot a dead body. Well, but what about all the things that she did leading up to it, going out the day before, digging the shallow grave, planning to lure her to the canyon? As the District Court of Appeal pointed out, that all supported a conviction as either an active participant or as an aid or an abetter to premeditated murder without regard to whether or not she shot a dead body. There was overwhelming evidence that they were lying in wait. The question is whether they were lying in wait to scare her or whether they were lying in wait to kill her. And what did the jury find? The jury found that they weren't lying in wait. His jury hung. Her jury found not lying in wait. But they found, after this judge answered this note, that she was guilty of first-degree murder. And my theory is that that's because the judge told them it didn't matter whether the body was dead or not when she shot her shot. But I'm not sure that the jury's rejection of the special circumstance of lying in wait answers the concern that I raised about evidence sufficient to show premeditation. It's not dispositive of the issue, but it surely supports my theory that they didn't wholeheartedly endorse the prosecutor's case. The prosecutor proved they were lying in wait. Well, you know, they came, what, the day before? They dug a shallow grave. Yes. And then they lured her into this place. Yes. And then one had a gun, fired it into her skull. Yes. Killed her. Yes. Then the other one grabbed the gun and fired again. Yes. Yeah. And then they put her in the shallow grave, then they put a couch on top of her, and then went off to have dinner and go to the movies. Yes. Yeah. But. Nice friends. Well, here's the other thing I wanted to say before we get too far, and that is just days before the judge answered this note, he had ruled as a matter of law that the shooter, that the body victim was dead when Guerrero fired that first shot. He had ruled that as a matter of law when he was granting the motion to dismiss the gun enhancement. And the reason he did that was at 702B of my appendix is the coroner's drawing of the shots. This was an exhibit of the prosecutor. And it shows that the fatal bullet went in the back of the head here and was lodged here, pointing slightly downward. Yes. The shooter was much taller than the victim. But the other shot was right here, straight up and front to back, like the gun was held here. So it was pretty clear to this jury looking at the. You're messing up your hair now. Oh. It was pretty clear to this jury and this judge that the co-defendant, Damian Guerrero, had fired the fatal bullet, and that even though the coroner couldn't say that 100% because he didn't know where the different actors were, it was pretty clear to this jury and this judge that when Nordman fired Gray's wound, the body was already dead. But the writ judge on this was a different judge. Ms. Johnson, I'm still having a hard time, though, getting around the three alternative grounds supporting conviction. The state courts looked at the claim with regard to the issue that you want to argue and concluded that it really didn't matter whether or not there was a shot into a dead body, that the other jury instructions were more than sufficient to establish liability through a better or active participant. Well, that was the court of appeal, and the evidence was sufficiency of the evidence, which takes the prosecutor's case in the best light. What I'm talking about here is constitutional error in instruction, which you have to look at all the facts. But you have to show prejudice. I guess that's where you and I are talking past one another. And my concern is she can't show prejudice with regard to the other two grounds, which are amply supported by the facts in the record. Supported is different. Okay, let me put it to you this way. Well, let me rephrase the question. How is it objectively unreasonable for the California courts to rule as they did that habeas relief was properly denied because of those alternative grounds that supported conviction and therefore no prejudice? So you're skipping past the, okay, 2254D says unreasonable application. And here's what happened. In rebuttal, the district attorney argued the law shouldn't protect somebody just because the victim expires before the second shot is fired. That was right at the end of his rebuttal argument. And then the jury sent out this note. What is the law in shooting a dead body? Are we responsible for this? And the judge said, no, you're not responsible. It's not an issue for you to decide. You don't have to be concerned with that. So, in other words, if they believed that the first shot was an accident and then in her confusion she shot the second shot into the dead body, there was no way that they could use that theory. Well, even on your accident theory, didn't the state courts look at the evidence from the former owner of the gun as to the weight of the trigger pull and say it would have been very difficult to accidentally pull the trigger? That was the superior court in the insufficiency of evidence, not the issue that the state court that we are reviewing here is the superior court writ opinion, which is where the judge said the court told them they were not to be concerned with the law rather than the fact. And since juries aren't supposed to be concerned with law, that's not an error. That's what we're here on. The Court of Appeal didn't have this issue. The California Court of Appeal on Direct Appeal had an issue of insufficient evidence, but they didn't have this issue before them. This is a new issue that I raised on habeas. And the habeas court in the superior court said that it wasn't an error because the judge, they didn't have a duty, the judge didn't have a duty to tell them the law. Well, that's incorrect, and that's, that can't be correct. When the jury asked them what's the law on shooting a dead body, he said no, that's not an issue for you to decide. So he directed. Kennedy, wasn't he reasonable in interpreting that question as asking whether there was any law with respect to shooting a dead body? Well, he told them it wasn't an issue. It's not an issue. There's no claim here of a desecration of a dead body, is there? Well, that was her whole defense. The defense. Is she charged with desecration of a body? No, but she said it. Then it's not the law. They didn't ask anything but what is the law about this? And he said you're not to be concerned with it. What's wrong with, is that an unreasonable interpretation of the question? Yes. What's unreasonable about it? Because the, okay, because the judge has a duty when there's a question to answer that question so that the jury can take the law. Suppose the question were what's the law about a roller coaster? He would say you're not concerned with a roller coaster. Well, that wasn't at issue. Well, neither was desecration of a body at issue. I'm sorry, but her defense was that she shot a dead body. That's a defense, but that's not an issue in the case. Her defense wasn't an issue in the case? Shooting a dead body under this, under these circumstances where there's plenty of evidence that she was an aider and abetter and a principal, therefore a principal. What's the issue in the case? I think that there was plenty of evidence that she, they lied. Do you think she knew she was shooting at a dead body? I don't know. She said she was confused, and I don't know if she knew it, but I don't know that that. I thought she said she was putting the victim out of her misery. I think that's what she said. Because the body was still twitching and moving. And I don't know if that is an element, because if a body is dead, it's already dead, and that's the other thing that, you know, the jury was instructed on. I mean, from her own lips, it was essentially a mercy killing, as I understand what she told me. Right, but if the body was dead, it wasn't a killing at all. Well, but I thought the pathologist testified that involuntary movements could have occurred even after the body was dead. Right, and that's what she saw. Which would have corroborated her thinking. What she was really doing was administering a coup de grace. Wow. So, if she thought the body was alive, but the body was dead. And the coroner testified that after the first shot, the body was dead. I mean, I guess the concern I have here is... Well, the brain was dead. Yes, and there was an instruction that if the brain's dead, the body's dead. But I guess what concerns me here is if that was all we had in the record, you might have a colorable claim, but it's all of the things that happened the day before, plus the conduct afterwards. Let's go to dinner and a movie, and then I'm going to call two days later and leave a phony voicemail message saying let's go hang out together, and then the testimony about her going around hanging posters, but being in a pretty good frame of mind. I mean, the jury had all that evidence before it in order to determine whether this thing was really a joke or a premeditated murder.  So what about if the thing was an accident and then she in panic? After all that evidence, the jury asked lots of notes. Well, what was an accident? The first shot? The first shot was an accident. An accident. You point a gun at somebody's head and it goes off, and that's an accident. Yes. That was their theory, that that was an accident. And Guerrero's jury hung on that very issue. That was his only issue. So the question was, the jury asked all these questions. What about if this was an accident and at the time she, I put all the jury questions in my reply in order. They said, can lying in wait apply to another crime which does not result in murder? And then they didn't find lying in wait. So in other words, they did not think that Nordman was guilty of the murder, but for the fact that the judge told them it didn't matter whether the body was dead. They also asked, what if you catch somebody by surprise? What if you surprise someone not to kill them but to do something else? What if we lie in wait to scare you? And on day four, I mean, this was going on. They had five days of deliberation after hearing all the evidence, and they were still asking questions about what if you just lied in wait to scare them. They were still asking that. Mr. Jackson, what do we do with the finding of the trial judge that the question that he answered to the jury and the way he answered it was agreed by both counsel? Well. Now, that's the record. He says, I talked to both counsel and they agreed with this answer, and so I went into the jury room and I told them that. I have two. Now, the defense attorney says, I don't remember, but that's what the record shows. Now, is the State appellate court unreasonable in accepting that as being a waiver of the position? Well, yes, and for two reasons. Why? One is that this was not the law, whether somebody agreed to it or not. The judge has a duty to explain the law so that the jury can reach the facts. The judge, even if somebody agreed, the judge can't direct a verdict on an element of the crime. But here. But he didn't do that. He said counsel agree that the jury should not be concerned with the law of shooting a dead body. So therefore, I'm not. So I'm going to tell the jury. He said, so that's not an issue for you to be concerned with. That's right. Shooting a dead body isn't an issue for you to be concerned with. That's right. And both counsel. But that was the defense. It didn't seem to be the defense of counsel at the trial. They agreed to this. Now, what do we do with the determination by the state court that this was, in effect, a waiver of the issue? Okay. First of all, the state court cited a place in the record where the lawyer did agree, but it was on different questions. And I went back and read every single place where the court, the court read back every single question and answer in open court with the lawyer there, and he agreed to all except the very first one. Nobody agreed on the record. The only thing we've got is the judge says, I talked to counsel yesterday. They agreed I can answer you. Period. And then he answered. He didn't say, counsel told you I can tell you this answer. He never said, he said they agreed that I can come in and answer you. I believe that the counsel did agree that he could come in and give him short answers, but not this answer. And there's nothing on this record other than the judge saying, I've talked to counsel. They've told me I can talk to you. He doesn't say, they've told me I can tell you that the issue of a dead body is not something for you to be concerned with. Well, we've got a factual finding. I'm looking at Judge Wade's order at line 18 on page 5. It is clear from the record that petitioner's counsel agreed to and ratified the court's language and conduct. And it seems to me you have to convince us that there's clear and convincing, by clear and convincing evidence, that that factual determination is not true. Okay. And I haven't heard anything sufficient to do that. Okay. On page 29 of the excerpts, Judge Wade said, petitioner's counsel approved of the court's explanation. And he cites page 1701 of Exhibit 5. Which is the contemporaneous entry in the record, is it not? Right. And at that, counsel approved every single one except that first note. So Judge Wade was laboring under a misperception that counsel had agreed to this note. He had not agreed to this note. He had agreed to all the other notes on the record. But the defense lawyer says, well, if the judge says that I agree to it, I can't dispute. No, he didn't say that. He said, I don't dispute that they called my office, but I did not agree to this answer. That's what he said in his declaration. I don't dispute that the judge called my office. But he said, isn't this where he said, but if the judge said it, I'll defer to it? He went along with it. No, he didn't go along. But look, what this comes down to is you have these two young women. And it's your argument that this was a prank. They went out there the day before. They dug this grave, shallow grave. And they left their shovels there. And then they lured her into this canyon. And they were just going to frighten her. And that this prank went awry. Yes. It was an accident. Someone had a loaded gun. Somehow the trigger went off. It hit her in the head and killed her. The other one grabbed the pistol or the weapon and then fired again. And that was all a teacher, some kind of a lesson, was it? No. Well, what was it? Well, in the record there was evidence that she had a fear of being killed and buried on this mountain. That was like a bad dream that she'd had. Oh, yeah. So that was the reason behind the prank. Yeah. So she had a bad dream that she was going to be buried on this mountain. So they thought they'd give her a replay of it. Well, it was a terrible idea. But let me make sure that I have the language of the defense attorney's declaration. He said he argued that when Kinsey fired the second shot, the victim was already dead. I have no recollection of the judge calling me, but if he said he called me, I'm sure he did. However, I would not have agreed that the court could answer in this way. What happened was the court was adjourned for the day after the jury went to deliberate. And they sent out a note that first day. The court, the clerk, called the lawyer's office to say there was a note. I don't know. This was after 410. The note came out at 410. So this is sometime between 5 o'clock, sometime like that. The lawyer gets the note. Maybe he gets the message that there's a note. But the judge goes in there at 9 o'clock the next morning and gives this instruction. I've never heard of a lawyer that just agreed that they could go back to their offices and that if the jury had a question, the judge could go into the jury room and answer it. Yeah. I mean, is that the way they do things? I've never heard of that. There were two juries. His jury was still getting closing arguments. They only had one jury room. So if they were going to, if he was going to instruct them, he would have had to send these people out somewhere. So he went back there in his robes in the jury room with the court reporter and did a lot of talking to them. I don't know if that's a normal. I don't. I mean, I think it's a terrible way to do business, but that's what he did in this case. And he had the court reporter with him, so we know what was said. But have you ever heard of a defense attorney who would agree that the judge answered a question in this way? Well, how many courtrooms do they have that this court has? In San Bernardino, I don't know. They have 20 maybe. But in this case, he had two juries and one jury room. They're not all being used at the same time. So you just make arrangements with a neighboring judge. Let me use your jury room. That happens. Well, they must have been because they had two juries out at the same time. Well. All the time. Because two juries were hearing all the evidence all the time. I don't know. But I'm just saying that no defense attorney would agree to have the judge direct a verdict on the very issue that he was, his defense was, and that when the superior court in the writ said. I don't think the judge directed a verdict on anything. When he said that shooting a dead body is not an issue for you to determine? He said that's not an issue for you to decide. I think we understand. What was their question again? What is the law on shooting a dead body? Do we have to be concerned with that? Are we responsible for determining this? What is the law on shooting a dead body? Are we responsible for determining this? So at that point, he should have said, he should have instructed them on the law. But what is the law on shooting a dead body? Well, that's a good question. And everybody says, well, everybody knows you can't. If you shoot a dead body, it's not murder. But I didn't know that. I don't know what, you know. No, no, no. What is the law on shooting a dead body? The body is dead. You can't murder it because the instructions in this case are that you have to kill a person in order to accomplish murder, right? I think you could have attempted murder if you thought the body was alive. The law on shooting a dead body is in tort for desecration of a dead body. That's how it is. What? Is that an issue in this case? Yes, that's an issue in this case, because I was there at the time. I think we're going round and round. You're way over time. I'm sorry. No, no. It's all right. What are you going to tell us? May it please the court, Michael Poulos for the respondent. Norman asked this court to find that the state court's interpretation of the judge's answer to the jury question was not only incorrect, but was objectively unreasonable. But that's not all. Norman also asked this court to conclude that the judge's answer caused the jury to convict Norman of first-degree murder for shooting a dead body. To reach that conclusion, this court would have to believe the jury abandoned the common understanding of what murder is, ignored all the other jury instructions the trial judge gave them explaining what murder was, and ignored the prosecution's sole theory of liability in this case. This court should reject all of those contentions and affirm the district court's denial of Norman's habeas petition. All right. That's your argument? Yes, Your Honor. All right. Good. He's sending you a hint here. You don't have to take it, but it's a hint. I'll take the hint and submit, Your Honor. Okay. Can I just have one minute? Sure. After, the next day or two after the jury heard this question and answer, the judge instructed them on the elements of murder. One of the elements of murder is that a body, a human being is killed. But the prosecutor had argued in closing a human being is killed. Well, of course that's true because you've got the dead body. That's how he explained that. So it's my position that when the judge told them they didn't have to be concerned with the issue of the dead body, that directed a verdict on an element of murder, that you have to shoot a live body. And they were not told that. Well, look, you know, they were both in this thing right from the start, weren't they? They were both in it. They went out and dug the grave together. They liked each other. They didn't like this other lady, whatever it was. And they dug the shallow grave. They left their shovels there. And they agreed that they'd get her out there. They got her out there. And they killed her, two of them. They both worked together. Right. They were both together. They were together on the joke. They were together. Well, it was a terrible joke. Look, it was a terrible joke. But his jury hung. Why would any thinking jury think this was a joke?  We don't know why they, what they dealt with Mr. Herrera. Speculating. Speculating. In the newspaper. You talk about four days. Well, I remember when on a traffic ticket, when we used to have jury trials on traffic tickets, they'd be out for two days or longer. Sometimes they'd hang up on a traffic ticket. So the time, you know, that's something to think about. But juries can go out and spend an hour, come back with a verdict. Another group would go out with the same evidence and maybe spend three days. It all depends on what the dynamics is in the jury room. What about the question where they said, can you lie in wait to scare someone? That was on the day four of the jury deliberations. They were still stuck on she was lying in wait. They were trying to scare her, not kill her. That doesn't, maybe someone had a question like that. Doesn't mean they all had the question. You only need one for a mistrial. One juror is all you need. Yeah, I know that. So they, I mean, I don't know what went on in the jury room. You don't know what went on. No, but if one juror disagrees, then we should get into a trial. But apparently after, we don't know what was won. It's just, look, you have to believe that this was really a prank. It's hard to believe. Okay, thank you. Thank you very much. All right, matter submitted.
judges: Pregerson, Tallman, Bea